**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSE RIVERA,**

                               **Plaintiff,**

    vs.                                                 9:09-CV-1394
                                                          (MAD/DRH)

**DR. BEPEN BHAVSAR, Eastern Correctional**
**Facility Physician and DR. MIKHAIL GUSMAN,**
**Eastern Correctional Facility Physician,**

                               **Defendants.**
_____

**APPEARANCES:**                                    **OF COUNSEL:**

JOSE RIVERA
03-A-2925
Woodbourne Correctional Facility
99 Prison Road
PO Box 1000
Woodbourne, NY 12788
*Plaintiff Pro Se*

New York State Attorney General           Dean J. Higgins, Esq.
Albany Office
The Capitol
Albany, NY 12224
518-473-8047
*Attorney for Defendants*

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff *pro se*, an inmate in the custody of the New York State Department of

Correctional and Community Supervision ("DOCCS"), commenced this action pursuant to 42

U.S.C. § 1983, alleging that Defendant violated his rights under the Eighth Amendment when he

was deliberately indifferent to his serious medical needs. *See* Dkt. No. 28 at 1. Plaintiff also

brings claims sounding in negligence and medical malpractice. *See* Dkt. No. 28 at 10-13. The parties have cross-moved for summary judgment pursuant to Fed. R. Civ. P. 56, and opposed one another's motion for summary judgment. *See* Dkt. No. 38-2; Dkt. No. 49-7; Dkt. No. 53-1. In opposing Defendants' motion for summary judgment, Plaintiff conceded that his complaint against Defendant Dr. Mikhail Gusman should be dismissed. *See* Dkt. No. 53-1. Therefore, the issue currently before the Court is whether Plaintiff's complaint against Defendant Dr. Bipin Bhavsar should be dismissed, as requested by the Defendants; or if Plaintiff's motion for summary judgment should be granted, finding Defendant Bhavsar was deliberately indifferent to Plaintiff's serious medical needs. For the reasons set forth herein, the Court grants Defendant's motion for summary judgment.

## II. BACKGROUND

### *a. Medical History*

The facts in this case, unless otherwise noted, are undisputed. Defendant Bhavsar is a licensed physician employed by DOCCS, at the Eastern Correctional Facility ("ECF"). *See* Dkt. No. 53 at ¶¶ 2, 3. On February 15th, 2008, Plaintiff reported to the medical unit at ECF, complaining of a "birthmark over his left eye." *See* Dkt. No. 49 at 34. A subsequent dermatopathology report would later find that the ailment Plaintiff complained of was actually a cutaneous papilloma ("lesion"), caused by the papillomatous virus ("HPV").[1] *See* Dkt. No. 49-1; Dkt. No. 53 at ¶9. Plaintiff was seen by Nurse Anthony, at which time he was given eye wash and a doctor's appointment was scheduled. *See id.*

---

[1] "Human papilloma virus (HPV) is one of the sexually transmitted diseases [] seen throughout the population. More than 60 types of HPV have been identified, and 20 are known to cause genital warts; other types of HPV have [the potential to cause tumors] . . . Several cofactors that have been identified in the development of HPV include the oral contraceptive use, pregnancy and parity, nutrition, smoking, unsafe sex practices, and immunosuppression. Treatment options are aimed at destroying visible lesions and include topical therapy, laser vaporization, cryocautery, liquid nitrogen, or simple excision." *See* NATIONAL LIBRARY OF MEDICINE MEDLINE DATABASE (1997), *available at* LEXIS.

Defendant Bhavsar saw Plaintiff on one occasion, during Plaintiff's doctor's appointment, on February 26th at ECF. *See id.* at ¶¶9, 20. Defendant Bhavsar prescribed Plaintiff Condylox[2] gel 0.5% ("Condylox"), which is used for the removal of warts/skin lesions that are caused by HPV. *See id.* at ¶¶10, 12; Dkt. No. 48-3 ¶14; Dkt. No. 43-1 at 37. Plaintiff was instructed to apply the Condylox to the growth on his eyelid, with his finger, twice a day for 3 days, then to discontinue use for 4 days, and repeat if necessary. *See* Dkt. No. 53 at ¶10. Plaintiff was also instructed to wash off the Condylox with water ten minutes after each application. *See id.* at ¶10. Furthermore, Plaintiff was warned that the Condylox could irritate his skin and cause the area to become red and swollen. *See also id.* at ¶¶10, 12. "The [Condylox] was to be used on the external skin of the eyelid and not [in Plaintiff's] eyes." *See id.* at ¶13. Also, Plaintiff was warned to exercise caution in keeping the Condylox from getting into his eye and to report to the medical clinic if he suffered any adverse reaction. *See id.* at ¶12. Plaintiff admits that he did not use the Condylox in his eyes. *See* Dkt. No. 53 at ¶13.

On March 17th, Plaintiff reported to the medical unit at ECF having suffered an adverse reaction from the prescribed medication. *See* Dkt. No. 49 at 35; *see also* Dkt. No. 53 at ¶15. Nurse Clark, who examined Plaintiff, noted that his eyelid was inflamed and appeared to be double in size. *See* Dkt. No. 53 at ¶15. However, both Nurse Clark and Nurse Hamberg noted that Plaintiff's eyeball was not inflamed. *See id.*; Dkt. No. 49 at 35. Nurse Clark stopped the use of the Condylox, and directed Plaintiff to rinse with a buffered eye wash and to apply cool compresses. *See* Dkt. No. 49 at 35. An appointment was made for Plaintiff with Dr. Gusman for the following day. *See* Dkt. No. 48-3 ¶ 21.

---

[2] Condylox is used to cause "necrosis [tissue death] of visible wart tissue." *See* MOSBY'S MEDICAL DRUG REFERENCE (Mosby 2002), *available at* LEXIS.

3

On March 18th, after examining Plaintiff, Dr. Gusman prescribed the eye drop Pred Forte[3] and spoke with Dr. Walker of the ophthalmology service at Albany Medical Center Hospital ("AMCH") to "request expedite [sic] [opthalmogic] evaluation." *See* Dkt. No. 49 at 33; Dkt. No. 53 at ¶24. On March 20th, Plaintiff reported to the medical clinic complaining that his left eye was itching and that he was in pain and unable to sleep. *See* Dkt. No. 49 at 37. The Nurse who saw Plaintiff noted that his "eye was red and edematous and that [he] was unable to open the eye." *See* Dkt. No. 53 at 26. Plaintiff was given 400 mg of ibuprofen for pain. *See* Dkt. No. 49 at 37. Later that day, Plaintiff's eyes were examined at AMCH. *See* Dkt. No. 53 at ¶29. The examination showed that Plaintiff's eyes were normal, aside from his inflamed upper eyelid. *See id.* Dr. Walker concluded that Plaintiff had papilloma of the left eyelid, ptosis,[4] and "mild external redness of the skin of the eyelid." *See id.* ¶30. Dr. Walker suggested the lesion be surgically removed in 1-2 months. *See* Dkt. No. 53 at ¶34.

On March 27th, Dr. Gusman requested a consult with Dr. Meyer at the RMU to arrange to have Plaintiff's papilloma removed. *See* Dkt. No. 49 at ¶37. Dr. Gusman saw Plaintiff on April 4th, and noted that Plaintiff had mild irritation of papilloma of the left upper eyelid, but that the eye was otherwise normal. *See* Dkt. No. 49 at 38. The record shows that Plaintiff reported to the medical unit on April 15th, 2008, but no complaints about his left eye or eyelid were recorded. *See id.* Furthermore, the record shows that Plaintiff chose not to receive treatment on April 18th, April 25th, April 29th and May 2nd.[5] *See id.* at 27, 29; Dkt. No. 53 at ¶39.

---

[3] Pred Forte is an "[a]nti-inflammatory or immunosuppressant agent in the treatment of a variety of diseases of hematologic, allergic, inflammatory, neoplastic, and autoimmune origin; (ophth) steroid-responsive inflammatory conditions of the palpebral and bulbar conjunctiva, lid, cornea, and anterior segment of the globe, corneal injury (chemical, radiation, or thermal burns or penetration of foreign bodies)." *See* MOSBY'S MEDICAL DRUG REFERENCE (Mosby 2002), *available at* LEXIS.

[4] Drooping of the upper eyelid, attributed to the pharmaceutical reaction Plaintiff sustained. *See* Dkt. No. 53 at ¶31.

[5] Plaintiff attributes his decision not to receive treatment on some of these occasions to the fact that he did not want to be seen by Defendant Bhavsar because he was "the Doctor who hurt [P]laintiff [sic]." *See* Dkt. No. 48-5 ¶45; *see also* Dkt. No. 48-5 ¶47.

4

On May 7th, Dr. Barrett removed the lesion from Plaintiff's left upper eyelid and Plaintiff "had a normal eye examination." *See* Dkt. No. 49 at 49; Dkt. No. 48-2 at ¶42. Dr. Barrett ordered a one-month follow up and post evaluation, and a pathology review. *See* Dkt. No. 49 at 25, 49. Dr. Gusman ordered Plaintiff ointment, multi-vitamins and lotions in accordance with Dr. Barrett's post operation orders. *See* Dkt. No. 49 at 25; *see also* Dkt. No. 53 at ¶44. Initially, Plaintiff refused an ophthalmologic follow up after his surgery, however he later requested one on June 5th. *See* Dkt. No. 49 at 22, 24. On July 1st, after examining Plaintiff Dr. Gusman reported that he had a "normal exam" and that he "[did] not need to see optometry." *See id.* On September 4th, Plaintiff was transferred to Woodbourne Correctional Facility ("Woodbourne"). *See* Dkt. No. 53 at ¶53. On May 11, 2009, Plaintiff complained that he had been suffering from a headache above his left eye since September of 2008. *See* Dkt. No. 49-4 at 1. From July 1, 2008, until May 11, 2009, the record shows that Plaintiff reported to the medical units at ECF and Woodbourne on numerous occasions, however the record does not show that Plaintiff was experiencing any issues with his left eye or eyelid in those appearances. *See* Dkt. No. 49. On February 4, 2010, Plaintiff reported to the medical unit at Woodbourne complaining that his "eyes [were] still dry and itchy." *See* Dkt. No. 43-2. On February 19, 2010, Dr. Wurzel, an optometrist examined Plaintiff and found he had "mild reddness [sic] on his left eyelid," and that his "[i]nternal ocular findings [and] interocular pressure were unremarkable." *See* Dkt. no. 49-3.

### b. *Administrative History*

On March 24th, Plaintiff filed a grievance complaint against Defendant Bhavsar for prescribing him Condylox. *See* Dkt. No. 49-5 at 15. Following an investigation, the grievance committee found that Defendant Bhavsar had made a mistake and should be made aware of his mistake in writing. *See* Dkt. No. 49-5 at 16.

5

### *c. Procedural History*

On December 16, 2009, Plaintiff commenced the within action (naming Defendant Bhavsar and Dr. Gusman as defendants). *See* Dkt. No. 1. On March 28, 2011, Plaintiff moved for summary judgment arguing that there are no genuine issues of material fact and that he is entitled to summary judgment as a matter of law. *See* Dkt. No. 38-2 at 9-10. On May 20, 2011, Defendants cross-moved for summary judgment arguing: (1) Plaintiff has failed to state a claim for medical deliberate indifference for either of the Defendants; and (2) in his Eighth Amendment claim against Defendant Gusman, Plaintiff failed to exhaust his administrative remedies. *See* Dkt. No. 49-7 at 4, 8. On June 9, 2011 Plaintiff conceded that his complaint against Dr. Gusman should be dismissed, but opposed Defendants' motion for summary judgment with regard to Defendant Bhavsar. *See* Dkt. No. 53-1 at 10.

### III.  DISCUSSION

**I.   Summary Judgment Standard**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56©. Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See id.* The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the

6

nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e). It is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c)(e)). Where parties have interposed cross-motions for summary judgment, each motion must be independently assessed, using this standard as a backdrop. *See Cicio v. Graham*, 2010 U.S. Dist. LEXIS 23822, at *14 (N.D.N.Y. Feb. 24, 2010) (citing *Light v. Sources, Inc. v. Cosmedico Light, Inc.*, 360 F. Supp.2d 432, 434 (D. Conn. 2005).

"Defendants can meet their burden of establishing their entitlement to summary judgment by relying on plaintiff's medical records to establish the absence of any evidence supporting deliberate indifference to his mental health needs." *Guarneri v. Hazzard*, 2010 WL 1064330, at *8 (N.D.N.Y. 2010) (citing *Mills v. Luplow*, 2009 WL 2579195, at *8 (W.D.N.Y. 2009)). "Though conventional wisdom might dictate the submission of affidavits from the primary actors … [the] defendants' decision to rely instead upon the lack of evidentiary support for plaintiff's claims, is sufficient to cast the burden upon the plaintiff to come forward with evidence demonstrating the existence of genuinely disputed material issues of fact for trial with regard to those claims." *Id.*

Where a party has failed to properly respond to the opposing party's Statement of Material Facts ("Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true to the extent that those facts are supported by the evidence in the record. *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) (holding that the court may not rely solely on the movant's statement of undisputed facts contained in its Rule 56.1 statement and must be satisfied that the movant's assertions are supported by the evidence in the record).

In reviewing a *pro se* case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.*, 289 F. Supp. at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *Id.* at 295 (citing *Showers v. Eastmond*, 2001WL 527484, at *2 (S.D.N.Y. 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment. *Lee v. Coughlin*, 902 F.Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## II. Deliberate Indifference to Medical Needs

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This provision includes any "unnecessary and wanton infliction of pain" on those who have been convicted of crimes. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). Nevertheless, the United States Supreme Court has recognized that not "every injury" a prisoner suffers "translates into constitutional liability for prison officials." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In order to establish a claim for unconstitutional denial of medical care, "a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Hathaway*, 37 F.3d at 66 (quoting *Estelle v. Gamble*, 429 U.S., 97 104 (1976)). This standard requires proof of both an objective and subjective element.

First, the prisoner must demonstrate that his alleged deprivation was of a "sufficiently serious" nature. *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). This can be shown by proving "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990). Courts have also considered factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Second, a prisoner must show that "the prison official knew of and disregarded his serious medical needs." *Chance*, 143 F.3d at 702 (2d Cir. 1998) (citing *Farmer*, 511 U.S. at 837). It is not enough to merely disagree over the proper course of treatment. *See id.* at 703. Rather, a prisoner must demonstrate that the prison official acted intentionally, for example, by "intentionally denying or delaying access to medical care or intentionally interfering with . . . treatment." *Estelle*, 429 U.S. at 97. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* at 106; *see also Palacio v. Ocasio*, 2006 WL 2372250, at *11 (S.D.N.Y. 2006) (the failure to diagnose a jaw fracture did not support a claim under 42 U.S.C. § 1983). Furthermore, "allegations of medical malpractice are insufficient to support a deliberate indifference claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *See Martinez v. Perilli*, 2012 U.S. Dist. LEXIS 3247, at *8 (S.D.N.Y. 2012) (citing *Chance*, 143 F.3d at 703).

### A.   Objective Element

9

For purposes of this motion, Defendant concedes and the Court will accept, that Plaintiff's condition constituted a sufficiently serious medical condition to meet the objective prong of deliberate medical indifference. *See* Dkt. No. 49-7 at 2.

**B.     Subjective Element**

Plaintiff argues that Defendant Bhavsar was deliberately indifferent to his serious medical needs by prescribing him Condylox and failing to consult with an optometrist before treating him. *See* Dkt. No. 28 at 10; Dkt. No. 53-1 at 5. Furthermore, Plaintiff argues that Defendant Bhavsar committed medical malpractice rising to the level of deliberate indifference. *See* Dkt. No. 53-1 at 9. Defendant Bhavsar argues that Plaintiff has failed to establish that he acted with deliberate indifference. *See* Dkt. No. 49-7.

*i. Prescription*

In order to demonstrate deliberate indifference in prescribing medication, Plaintiff must show "that Defendant was actually aware, or must have been aware, that [the prescribed medication] posed an excessive risk to Plaintiff's health." *See Pruitt v. Lewy*, 2007 U.S. Dist. LEXIS 101428, *20 (Sept. 25, 2007) (holding that Plaintiff's deliberate indifference claim failed despite proffering evidence that Defendant had prescribed Plaintiff medications which: made her illness worse, were risky given her pre-existing illness, and caused her other symptoms which she complained of frequently); *see also Lipinski v. DePerio*, 2006 U.S. Dist. LEXIS 50008, at *2 (W.D.N.Y. 2006) (holding that Plaintiff failed to state a claim for deliberate indifference where Defendant "mis-diagnosed a heart ailment and prescribed Plaintiff the wrong medication, which caused him to suffer from headaches and naseau."). Here, Plaintiff has not established that the prescription posed an excessive risk to him. Moreover, even assuming such a risk existed, Plaintiff has not established that Defendant had knowledge of the risk. Additionally, Plaintiff

10

admits that Defendant Bhavsar warned him that the medication could cause swelling, irritation and redness of the skin. *See* Dkt. No. 53 at ¶¶10, 12. Defendant Bhavsar also gave Plaintiff instructions for applying the Condylox and cautioned him to keep the medication from getting into his eyes. *See id.* Plaintiff's claims that Defendant prescribed medication that was "dangerous" and "inappropriate" are conclusory and unsupported by the record. *See* Dkt. No. 28 at 13. Therefore, Plaintiff has not shown that Defendant Bhavsar was deliberately indifferent in prescribing him Condylox.

### *ii. Consulting a Specialist*

Plaintiff also claims that Defendant Bhavsar's failure to consult with an optometrist before prescribing Condylox is evidence of deliberate indifference. *See* Dkt. No. 53-1 at 5. However, disagreements over the need for a specialist are not evidence of deliberate indifference. *See Hodges v. Wright*, 2011 U.S. Dist. LEXIS 132859, *4, 12 (N.D.N.Y. Sept. 29, 2011) (citations omitted) (holding that Plaintiff failed to state a claim for deliberate indifference against a Defendant who had allegedly misdiagnosed Plaintiff's torn patellar tendon as arthritis and did not permit his initial request to see a specialist); *see also Sonds v. St. Barnabas Hosp. Corr. Health Srvcs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over . . . the need for specialists or the timing of their intervention, are not adequate grounds for a *Section 1983* claim"); *see also Choice v. Blackwell*, 2002 WL 32079466, at *7 (D.S.C. 2002) ("[A]lthough the provision of medical care by prison officials is not discretionary, the type and amount of medical treatment is discretionary.") (internal citations omitted). Moreover, a plaintiff has not stated a claim for deliberate indifference where their treatment was adequate. *See Morrishan v. Druger*, 2010 U.S. Dist. LEXIS 67606, *8 (N.D.N.Y. 2010) (finding Plaintiff who claimed that he was given eye drops for onset glaucoma that caused his vision to blur, had not stated a claim for

11

deliberate indifference because the Defendant had evaluated the Plaintiff, prescribed him medication for his condition, provided him with follow-up appointments and sent him to see a specialist).

Here, Plaintiff admits and the record reflects that in treating his lesion, he was evaluated, laboratory work was performed on his lesion, medications were prescribed, he had follow up evaluations and was seen by specialists. *See* Dkt. No. 49 at ¶¶ 5, 9, 10, 19, 29, 41, 42, 50, 55. To the extent that Plaintiff claims that Defendant was deliberately indifferent because Plaintiff was not initially evaluated by a specialist, Plaintiff's claims are unsupported by the record. Moreover, while Plaintiff may have disagreed with Defendant's course of treatment, such a disagreement is not equivalent to deliberate indifference.

### iii. *Medical Malpractice*

Finally, plaintiff alleges that Defendant Bhavsar committed medical malpractice that rose to the level of deliberate indifference. *See* Dkt. No. 53-1 at 9. In the Second Circuit, medical malpractice may rise to the level of deliberate indifference where "a physician . . . chooses 'an easier and less efficious' treatment plan." *See Chance*, 143 F.3d at 703 n.11; *see also Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974) (stitching up Plaintiff's wound instead of attempting to re-attach his ear could constitute deliberate indifference). However, "[a] claim based solely on a doctor's misdiagnosis or faulty judgment, with no facts to support a charge of deliberate indifference . . . is not cognizable under § 1983." *See Tomarkin v. Ward*, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982). Aside from the allegations that Defendant Bhavsar prescribed him Condylox and did so before consulting a specialist, Plaintiff has offered no evidence that Defendant Bhavsar was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff was

provided with timely, adequate medical treatment and has not shown that Defendant Bhavsar committed malpractice that rose to the level of deliberate indifference.

## IV. CONCLUSION

After careful consideration, the Court finds that Plaintiff has failed to state a claim for summary judgment. Because all the federal claims have been dismissed the Court declines to exercise supplemental jurisdiction over Plaintiff's state claims of negligence and malpractice. The Court hereby

**ORDERS** that Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED.

**ORDERS** that the Clerk of the Court shall serve the parties with a copy of this Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 13, 2012
Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge